GERARD R. O'MEARA, ESQUIRE
Bar No. 002434
MATTHEW A. GOLDSTEIN, ESQUIRE
Bar No. 022171
Gust Rosenfeld, PLC
One South Church Avenue, Suite 1900
Tucson, Arizona 85701-1627
(520) 628-7070
*gromeara@gustlaw.com*
*mgoldstein@gustlaw.com*
*Attorneys for Skalak Administration, LLC*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Case No. 4:09-bk-07333-JMM |
| CHARLES JOHN CROWELL and CHRISTA KAYE CROWELL, | Chapter 11 |
| Debtors. | **OBJECTIONS TO DEBTORS' DISCLOSURE STATEMENT AND TO DEBTORS' CHAPTER 11 PLAN** |

Apache Pointe 30 Lender, LLC, Rio Corte Lender, LLC, and Sierra Vista 41 Lender, LLC (collectively, the "Lending Entities") object to Debtors' Disclosure Statement ("Debtors Disclosure") and to Debtors' Chapter 11 Plan ("Debtors' Plan") because Debtors' Disclosure and Plan do not provide for the treatment of the Lending Entities' claims; Debtors' Disclosure is misleading and does not account for all of Debtors' assets; Debtors' Plan is not in the best interest of creditors; Debtors' Plan is not feasible; Debtors' Plan seeks to extinguish nondischargeable debts; and because the Plan will allow Debtors to retain causes of action that

1

they fail to disclose and that belong to the bankruptcy estate.

**OBJECTIONS**

1. The Lending Entities object to Debtors' Disclosure and Plan because Debtors do not list the proofs of claim timely filed by Sierra Vista 41 Lender LLC and Rio Corte Lender LLC; nor does Debtors' Disclosure and Plan properly list the proof of claim timely filed by Apache Pointe 30 Lender LLC (Debtors incorrectly list "Apache Pointe Lenders LLC" instead).

In addition, Debtors' Plan for the Lending Entities is to set aside a pro rata amount in the event the Lending Entities prevail on their Complaint to Determine Nondischargeability of Debt. However, Debtors do not define how this pro rata amount will be calculated. Rather, the Plan states that the pro rata calculation will be "as established in paragraph J", but there is no paragraph J contained in Debtors' Disclosure or Plan. Debtors have therefore not provided information on the source of the funds or the base amounts from which they will calculate a pro rata share.

2. The Lending Entities object to Debtors' Disclosure and Plan because Debtors fail to disclose that they transferred substantial assets prior to for bankruptcy. Specifically, on or about December 2008, approximately four months before Debtors filed for bankruptcy on April 14, 2009, Debtors transferred a 51 percent interest in Ramsey Reserve LLC to a company called Eagle Pass LLC to pay for Debtors' attorney fees in a state court action against the Lending Entities.[1] Debtors owned a 100 percent interest in Ramsey Reserve before this transfer and; as

---

[1] Debtor's Related Entity Report shows that Debtors transferred 51 percent of their ownership interests in the three entities to Eagle Pass in December 2008. The Report notes the reason for the transfers as "Litigation Agreement." At his 341 examination in this matter, Debtor Charles Crowell testified under oath that the transfer of Debtors' 51 percent interest in the entities to Eagle Pass was performed to pay attorneys to pursue a lawsuit against the Lending Entities. Specifically, Debtor Charles Crowell described the arrangement with Eagle Pass as a "Legal

2

noted at Section 5.1.10 of Debtors Disclosure, Ramsey Reserve LLC's assets include a twenty acre parcel of property. Debtors also transferred 51 percent of their interest in Rio Corte LLC and Apache Point LLC at the time they transferred the Ramsey Reserve interest.

Debtors' transfer of their ownership interests of Ramsey Reserve deprived creditors of property interests otherwise subject to the bankruptcy estate. Accordingly, the 51 percent interest and corresponding interest in the 20 acres and any other assets held by Ramsey Reserve LLC must be disclosed and, pursuant to 11 U.S.C. § 548, should be returned to the bankruptcy estate and made subject to creditor claims before any plan should be considered.

3. The Lending Entities otherwise object to the validity and completeness of much of the facts asserted in Section 3.1 of Debtors' Disclosure. Specifically, Lending Entities object to Debtors' Disclosure because it fails to disclose and account for over $600,000.00 in missing funds that Lending Entities paid to Debtors and Debtors' front companies from 2006 onward. Records indicate that these funds were provided to Debtors for the development of properties but that such funds were not used for that purpose. It is unknown what Debtors did with these funds and whether the funds are secreted by Debtors. Further examination of Debtors on the location of these missing funds is therefore warranted.

4. The Lending Entities object to the Debtors' Plan because it is not in the best interest of creditors. Specifically, Debtors will lose their U.S. Government contracts and will have no realistic means to carry out their obligations under Debtors' Plan following entry of judgment against Debtors on the complaints of the Lending Entities pending in Adv. No. 4:09-ap-00823, and by Webster Bank in Adv. No. 4:09-ap-00912-JMM.[2]

---

Representation Partnership." Debtors' transfer of their ownership interests in Ramsey Reserve is of concern under 18 U.S.C. §§ 152(7) and 154.

[2] As shown in Debtors Disclosure and exhibits thereto, Debtors' only offer conclusory assertions

3

The only alleged justification Debtors' have for filing under Chapter 11 instead of Chapter 7 is the income from U.S. Government contracts Debtors maintain whereby they rent properties for the housing U.S. Department of Defense personnel. Debtors will lose these contracts upon entry of the nondischargeable judgment(s) because the Federal Acquisition Regulations provide for debarment upon a government contractor's conviction of civil judgment for: "[c]ommission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, violating Federal criminal tax laws, or receiving stolen property." 48 C.F.R. § 9-406-2(a)(3); Federal Acquisition Regulation Subpart 9.406-2.[3]

5. Lending Entities believe that Debtors' Plan is not feasible because the pending adversary proceedings will result in nondischargeable judgments eliminating Debtors' U.S. Government contracts. This probable loss will not be subject to reasonable justification and cannot be cured. Further, Lending Entities expect that they and other creditors will request conversion of Debtors' Chapter 11 proceeding to a Chapter 7 under 11 U.S.C. § 1112(b) following entry of any nondischargeable judgment.

6. The Lending Entities object to paragraphs C and D of Debtors' Plan to the extent Debtors seek to extinguish claims that are the subject of the Lending Entities' pending

---

that there is no basis for the claims filed by the Lending Entities and Webster Bank; whereas the Lending Entities' Complaint is supported by affidavits provided by third-parties not named in the litigation; and Webster Banks' Complaint includes a loan application signed by the Debtors. The Lending Entities have amassed further and voluminous evidence of Debtors' frauds for use at trial.

[3] To the extent any aspect of the debarment process is discretionary, the facts of the Lending Entities' Complaint, to include the number of investors affected by Debtors' frauds will be adequate to effect debarment by the General Services Administration ("GSA") and addition of Debtors and their companies to the GSA Excluded Parties List System.

Complaint to Determine Nondischargeability.

7. The Lending Entities object to Paragraph E of the Plan, in which Debtors seek to preserve their rights to pursue "[a]ny and all causes of action which the Debtors may have…." following discharge. Debtors must be ordered to properly disclose any and all causes of action they may have and such causes of action belong to the bankruptcy estate.

Based on the above objections, adequate information has not been provided in Debtors' Disclosure. The Lending Entities therefore respectfully request that the Court not approve Debtors' Disclosure and Plan.

In addition, because the entirety of Debtors' basis for proceeding under Chapter 11 instead of Chapter 7 is reliant on Debtors' maintenance of U.S. Government contracts for rentals of properties that Debtors have little or no equity interest in, and because Debtors will likely lose the government contracts if judgment is entered against them on the Lending Entities' and/or Webster Banks' pending complaints, it is not in the best interest of the creditors, nor is it feasible, to approve Debtors' Plan until the pending complaints to determine nondischargeability are adjudicated.

DATED this 8th day of October 2009.

                              GUST ROSENFELD, PLC

                              By    /s/ *Gerard R. O'Meara*
                                     GERARD R. O'MEARA
                                     *Attorneys for Skalak Administration, LLC*